IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PAUL L. MERIDETH, JR. d/b/a<br>PAUL L. MERIDETH PHOTOGRAPHY, | JURY DEMANDED |
| Plaintiff, | No. |
| -vs- | |
| THE ASSOCIATED PRESS,<br>a New York not-for-profit corporation,<br>TRIBUNE INTERACTIVE, INC.,<br>a Delaware corporation, and<br>DOE I through DOE III, | |
| Defendants. | |

## COMPLAINT

Plaintiff, PAUL L. MERIDETH, JR. d/b/a PAUL L. MERIDETH PHOTOGRAPHY ("Merideth"), by his attorney, MARK H. BARINHOLTZ, P.C., complains against defendants, THE ASSOCIATED PRESS, a New York not-for-profit corporation ("AP"), TRIBUNE INTERACTIVE, INC., a Delaware corporation ("Chicago Tribune"), and DOES I through III, and each of them jointly and severally, and alleges:

### Jurisdiction and Venue

1. This Court has jurisdiction over this case under 28 U.S.C. § 1338(a) and (b), § 1367, and § 1400(a). Venue is properly laid in this District under 28 U.S.C. § 1391(b) and (c).

### Parties

2. Plaintiff MERIDETH resides in this District, and has, at all times relevant, been an experienced professional photographer whose principal place of business is in Chicago, Illinois.

3. Defendant, THE ASSOCIATED PRESS ("AP") is, upon information and belief, a not-for-profit corporation organized under the laws of New York, and has at all times relevant been engaged in the news and stock photography business worldwide and within this District. AP owns and operates an online photo database known as AP Images ("AP Images") devoted to licensing and otherwise marketing photographic images to an extensive range of customers. AP maintains a bureau office in Chicago, Illinois, and may otherwise be found in this District.

4. Defendant, TRIBUNE INTERACTIVE, INC. d/b/a chicagotribune.com ("Chicago Tribune") is, upon information and belief, a business corporation organized under the laws of Delaware, and has at all times relevant been engaged in the online news business worldwide and within this District. Upon information and belief, Chicago Tribune owns and maintains an electronic digital photo archive and database from which it retrieves photographic images to use on the Internet and otherwise. Chicago Tribune maintains a bureau office in Chicago, Illinois, is qualified to do business in this State, and may otherwise be found in this District.

5. On information and belief, one or more persons and/or firms who have done business in, caused injury to plaintiff's property in, or which otherwise are located or may be found in this District, but whose identities and/or roles in connection with the circumstances complained of herein are not fully known or disclosed to plaintiff as of the filing of this action, are herein named as defendants DOE I through DOE III, and are either affiliated with or otherwise directly or indirectly supervised, participated in or financially benefitted from the unlawful dissemination and exploitation, *inter alia*, of the Infringed Work(s) as hereinafter alleged.

## Background

6. At or about May 1992, Merideth was contacted by The New York Times to provide photographic services, and to license certain of Merideth's photographic imagery thereby to be created, namely, portraiture of Chicago author Studs Terkel ("the Studs Terkel photos").

7. One or more of the Studs Terkel photos was to be reproduced in an article The New York Times was preparing to publish concerning Terkel.

8. Merideth, at all times pertinent, communicated conditions for such use and license of his imagery, namely, that use be limited to one-time North American print rights only, by The New York Times, and that other uses could be granted, if at all, by Merideth's permission only.

9. It was further understood and agreed by The New York Times that, other than the aforesaid license, authorship and copyright ownership, and all right, title and interest in the Studs

2

Terkel photos, would remain exclusively with Merideth.

10. It was further understood and agreed by The New York Times that the aforesaid license was conditioned upon authorship attribution of the photographic images in Merideth with a credit line to read "Photo by Paul L. Merideth," or substantially in conformance therewith.

11. At or about May 1992, Merideth created the photographic imagery depicting Studs Terkel and made the Studs Terkel photos available to The New York Times pursuant to the foregoing license.

12. Among the images created by Merideth, several depict Studs Terkel at a bar in a restaurant in Chicago; the images are entitled Studs Terkel "1" and Studs Terkel "A". ("the Works") Copies of the Works are attached hereto as group Exhibit "A".

13. At or about June 1995, Merideth also made certain of the Studs Terkel photos, namely, the Works, available to The New Press, a publisher of several of Studs Terkel's novels. Those images were likewise licensed by Merideth for limited use (*e.g.*, a particular book jacket), and under the same general conditions pertaining to Merideth's retention of ownership rights and conditioned upon photo authorship credit in Merideth.

14. At or about 2004, Merideth became aware that The New Press had distributed the Works for what Merideth alleged were uses outside the scope of the license previously granted to The New Press by Merideth. In 2005 Merideth sued The New Press for, *inter alia*, copyright infringement. That lawsuit was settled approximately one year later.

15. As part of the settlement with The New Press, at or about March 2006, notices were sent by The New Press to various media outlets, including AP and Chicago Tribune, explaining that the Works and the copyright rights therein were owned by Merideth and that any further use could only be made of the Works with Merideth's prior permission.

16. At or about May 2012, Merideth first became aware that AP and Chicago Tribune, by their respective failure and/or refusal to deal with Merideth, had thereby evidenced their intentions to, *inter alia*, (i) reproduce and disseminate the Work(s) via the Internet without any

license or permission from Merideth, (ii) improperly miscredit or otherwise omit to attribute authorship of the Work(s) of plaintiff, and (iii) to distribute the Work(s) in association with false copyright management information (CMI); all by widespread dissemination of the photographic Work(s) in the infringing uses, and otherwise, and without ensuring that the photo credit and/or appropriate copyright protection that Merideth had bargained for was accorded.

17. That the Works by Merideth contain substantial material wholly original with Merideth, and constitute copyrightable subject matter under the Copyright Act of the United States of America.

18. Merideth has complied with all registration and deposit requirements of the federal copyright laws and, obtained copyright registration for his copyrighted Works under Certificates of Registration No. VA-1-271-271, and No. VA-1-307-679. Copies of those registrations are attached hereto as group Exhibit "B".

## COUNT I
### (Copyright Infringement vs. The Associated Press)

19. Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 18 hereof, and for this Count I alleges against defendant AP, as follows.

20. No license was granted to or obtained by AP or other Doe Defendant(s), or any of them, for the reproduction and/or use of the Work(s) for any purpose.

21. Approximately May 2012, and on information and belief for some time prior thereto, and/or at times through the filing of this action, the AP infringed Merideth's Work(s), and his exclusive rights therein, by various means, including but not limited to, the aforesaid reproductions, publications, disseminations and displays of the copyrighted Work(s) through AP Images and otherwise worldwide without having first obtained a license therefor.

22. Examples of how AP or its licensees used and displayed Merideth's Work(s) are attached hereto as group Exhibit "C". (*inter alia* "Infringing Uses")

23. At all times relevant, the infringed Work(s) were carefully selected by AP to have

significant impact and emphasis desired to be communicated and exploited by said defendant, and all as a means to enhance its own economic gain.

24. That such acts aforesaid by defendant AP were for its own commercial use and benefit and infringed upon plaintiff's exclusive copyright rights in the infringed Work(s).

25. That although infringements aforesaid on the accused website(s) and otherwise have been suspended, in part, following notice by plaintiff to AP, as of the filing of this Lawsuit, defendant has failed and refused to acknowledge all uses made of the Work(s) and to identify the parties involved in the creation of the website(s) or other infringing uses, and therefore Merideth is informed and believes that the unlawful copyright infringements are likely and/or are threatened to resume and continue.

26. That by virtue of the acts hereinabove alleged, defendant has infringed plaintiff's copyrights, and he has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

## COUNT II
### (Copyright Infringement vs. Chicago Tribune)

27. Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 26 hereof, and for this Count II alleges against defendant, Chicago Tribune, as follows.

28. No license was granted to or obtained by Chicago Tribune or other Doe Defendant(s), or any of them, for the reproduction and/or use of the Work(s) for any purpose.

29. Approximately May 2012, and on information and belief for some time prior thereto, and/or at times through the filing of this action, Chicago Tribune infringed Merideth's Work(s), and his exclusive rights therein, by various means, including but not limited to, the aforesaid reproductions, publications, disseminations and displays of the copyrighted Work(s) via the Internet without having first obtained a license therefor.

30. An example of how Chicago Tribune used and displayed Merideth's Work(s),

together with its false claim to copyright ownership, is attached hereto as group Exhibit "D". In addition, Merideth is informed and believes that such defendant has engaged in numerous other unauthorized uses. (*inter alia* "Infringing Uses")

31. At all times relevant, the infringed Work(s) were carefully selected by Chicago Tribune to have significant impact and emphasis desired to be communicated and exploited by said defendant, and all as a means to enhance its own economic gain.

32. That such acts aforesaid by defendant Chicago Tribune were for its own commercial use and benefit and infringed upon plaintiff's exclusive copyright rights in the infringed Work(s).

33. That although infringements aforesaid on the accused website(s) and otherwise have been suspended, in part, following notice by plaintiff to Chicago Tribune, as of the filing of this Lawsuit, defendant has failed and refused to acknowledge all uses made of the Work(s) and to identify the parties involved in the creation of the website(s) or other infringing uses, and therefore Merideth is informed and believes that the unlawful copyright infringements are likely and/or are threatened to resume and continue.

34. That by virtue of the acts hereinabove alleged, defendant has infringed plaintiff's copyrights, and he has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

## COUNT III
### (DMCA Violation vs. AP and TRIBUNE)

35. Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraphs 1 through 34 hereof, and for this Count III alleges against the AP and Tribune named defendants, and each of them jointly and severally, as follows.

36. At all times relevant, upon information and belief, plaintiff's Work(s) were submitted to AP and/or Tribune and/or from AP and/or Tribune to various end users, by means of one or more of the following: (i) automated and/or computer assisted technologies, including but

not limited to scanning and digitization, (ii) electronic manipulation through computerized Photoshop or similar application, (iii) embodiment within a disc(s) (*e.g.,* CD-ROM) containing digital files which were encoded with various items of information and data embedded therein. Such information generally includes but is not limited to an author's or claimant's name and/or trade name, a copyright notice, and various other items of information pertaining to licensing terms. Such information is conveyed together with the photographic images as means of identifying, *inter alia*, the author or claimant for purposes of licensing the imagery ("the identifying information").

37. In addition to the digital data, upon information and belief, any and all versions of the Work(s) which were not communicated via the Internet would have been conveyed by Merideth accompanied by various items of identifying information printed on label(s) affixed to a photographic print or other means of conveyance or otherwise accompanying the Work(s) in a visible format or insert along with the container or other mode of transmittal.

38. That the name "Paul Merideth," as well as the copyright notice and various other items of licensing information, were at all times relevant, conveyed in connection with the infringed Work(s) by Merideth, or otherwise with his permission through The New Press, to AP and/or Chicago Tribune with the intent they be used to identify Merideth as the true creator and owner of the photographic image(s) and copyrights therein, and otherwise to identify the source of the Work(s).

39. That pursuant to 17 U.S.C. § 1202(c) of the Digital Millennium Copyright Act of 1998 ("DMCA") the identifying information so conveyed is deemed to be and constitutes "copyright management information" ("CMI") under the DMCA.

40. That defendants, and each of them, particularly after March 2006, had knowledge or reasonable grounds to know that Merideth intended that CMI was to be acknowledged as such, if not faithfully reproduced, in connection with any reproduction of Merideth's Work(s). At the very least, in the event they desired to alter, amend or remove such CMI from being associated

7

with Merideth's Work(s), defendants were obligated to first negotiate and obtain permission from Merideth to do so.

41. Notwithstanding defendants' knowledge, however, at all times relevant, the infringing reproductions of the Work(s) in the infringing Uses, removed the name and trade designation "Paul Merideth" and/or otherwise disassociated the copyright notice, and stripped out and scrubbed away all other CMI which Merideth had conveyed along with the Work(s) delivered to The New York Times and The New Press and which were, in turn, communicated to AP and/or Chicago Tribune by at least The New Press.

42. As a substitute, AP and Chicago Tribune each respectively, removed, altered and otherwise provided false CMI by claiming copyright and source in AP and/or Chicago Tribune, attributing authorship in the photography in the name of defendants as either "AP" or "Chicago Tribune," and otherwise deliberately omitted and removed Merideth's name, trade name and other CMI entirely, or at most times, from being connected with the Work(s), and in particular the Infringing Uses, via defendants' infringing website(s) and otherwise. *See* Exhibit "C" hereto.

43. That in addition to removing and altering CMI aforesaid, defendants and each of them distributed or imported for distribution, or otherwise publicly displayed, the altered CMI knowing that it had been altered and/or removed without the authority of the copyright owner, Merideth, or the law. Further, the defendants, and each of them distributed or imported for distribution, or otherwise publicly displayed, copies of the infringed Work(s) knowing that CMI had been removed or altered without the authority of the copyright owner, Merideth, or the law, or otherwise having aided and abetted such conduct.

44. That at all times relevant, defendants and each of them, in doing the acts and things complained of herein, intended or otherwise consciously disregarded, that the effect of their acts would be to induce, enable, facilitate or conceal an infringement and violation of Merideth's copyright attribution, integrity and ownership rights under Title 17 U.S.C. § 1202(a) (providing and distributing false CMI) and §1202(b) (removal and/or alteration of CMI) (Chapter 12), and

otherwise against unauthorized copying, dissemination and display of his Works, *inter alia,* under Title 17 U.S.C. § 501 (Chapter 5), or otherwise having aided and abetted such conduct.

45. That defendants, and each of them, have thereby violated the Digital Millennium Copyright Act, and Merideth's rights thereunder, and he has been caused to and has thereby, suffered and sustained substantial financial damage and irreparable harm, for which plaintiff's remedy at law is inadequate.

## COUNT IV
### (Liability vs. Doe I through Doe III)

46. Plaintiff incorporates by reference and realleges each and every allegation contained in Paragraph 1 through 45 hereof, and for this Count IV alleges against defendant(s) Doe I through Doe III, and each of them jointly and severally, together with AP and Chicago Tribune, as follows.

47. On information and belief, one or more individual(s), firm(s), affiliate(s) or contractor(s) were a conscious, active and dominant force causing or contributing to cause, and which resulted in, the unlawful infringements herein alleged.

48. That alternatively, or in addition to other infringers above alleged, on information and belief there are various persons and firms who financially benefitted from and/or retained rights to exercise control over such unlawful activities as are alleged above, and are therefore vicariously liable for such infringements.

49. On information and belief, those individuals, firms, affiliates and/or contractors above referenced who personally or directly contributed to, authorized and/or participated in infringing Merideth's Work(s), and his exclusive rights therein, otherwise violated his rights under the DMCA, by the various means aforesaid, *inter alia.*

50. That such tortious acts hereinabove alleged against such Doe defendants were and are for their own individual gain and benefit, as well as the gain and benefit of their firms, affiliates or contractors, and infringe upon Merideth's exclusive copyrights in the Work, and otherwise

violating his rights under the DMCA.

51.     That by virtue of the acts hereinabove alleged, defendants Doe I through Doe III infringed Merideth's copyrights, and violated his rights under the DMCA, and he has been caused to and has thereby suffered and sustained irreparable harm and economic injury.

WHEREFORE, plaintiff, PAUL MERIDETH, prays for findings and judgment in his favor and against the defendants, and each of them jointly and severally, as follows:

A.     That defendant(s) have infringed plaintiff's copyright rights in the Work(s) in violation of 17 U.S.C. § 501.

B.     That defendant(s) have violated plaintiff's rights under the Digital Millennium Copyright Act, 17 U.S.C. § 1202.

C.     That defendant(s) be required to pay to plaintiff such actual damages as plaintiff has sustained in consequence of defendants' infringements and violations, and to account for all gains, profits and advantages derived by defendant(s) therefrom, or such statutory damages for all infringements as shall appear proper within the provisions of Chapter 5 and Chapter 12 of the copyright laws.

D.     That defendant(s) the AP, Chicago Tribune, and various of the Doe defendants, are liable to plaintiff for such reasonable attorney fees, and exemplary damages, incurred in this action as may be allocated to infringements and DMCA violations pertaining to the applicable Work(s), as follows:

i.     That such damages assessed be increased if infringements are found to be committed willfully.

ii.     That the Copyright Act, § 504(c)(2) thereof, provides, *inter alia*, that willful infringement of copyright is punishable by an award of statutory damages, if applicable, in amounts up to and including $150,000.00 for each work infringed.

iii.     That the Digital Millennium Copyright Act ("DMCA"), §§ 1203(c)(3)(B)

*inter alia*, provides that each act in violation of plaintiff's rights in the integrity of his CMI, *e.g.*, a posting on the Internet, shall be punishable by a separate award of damages of up to and including $25,000 for each violation.

    iv.    That plaintiff is entitled to the recovery of costs of enforcement, including attorney fees for the infringement of copyright in the Work(s) as allowed pursuant to 17 U.S.C. § 412(2), *e.g.*, infringements which commenced after the effective date of plaintiff's copyright registration(s),

    v.    That plaintiff is entitled to the recovery of his costs of enforcement, including attorney fees for violations of the DMCA pertaining to the Work(s) as allowed pursuant to 17 U.S.C. § 1203(b)(4) and (5), irrespective of the effective date of plaintiff's copyright registration(s).

E.    That the Court grant such other and further relief as is reasonable to remedy infringements in any manner, either at law or in equity, including injunction, impounding and reasonable disposition of all infringing articles, as follows:

    i.    That defendants along with any agents and servants, and all those person in active concert or participation with each or any of them be permanently restrained and enjoined from directly or indirectly infringing plaintiff's copyright rights in any manner, and from exhibiting, causing, contributing to, or participating in, the unauthorized exhibition or distribution in any manner of the Work(s) or any component part thereof.

    ii.    That defendants, their officers, directors, principals, agents, servants, employees, successors and assigns and all those in active concert or participation with it/them be permanently enjoined and restrained from manufacturing, producing, distributing, circulating, selling, advertising, promoting or displaying anything bearing any simulation, reproduction, derivative adaptation, counterfeit, copy or colorable imitation of any artistic works created by Paul Merideth including but not limited to the Work(s).

    iii.    That defendants be required to deliver up for destruction all forms and

copies of the Infringing Uses and all promotional and advertising material and other unauthorized matter which picture, reproduce or utilize any infringing part of the Work(s).

F.    Together with pre-judgment interest, plaintiff's costs and reasonable attorney fees.

PLAINTIFF DEMANDS TRIAL BY JURY

>PAUL L. MERIDETH, JR. d/b/a
>PAUL L. MERIDETH PHOTOGRAPHY,
>Plaintiff.
>
>By *[signature: Mark Barinholtz]*

ATTORNEYS FOR PLAINTIFF:

Mark Barinholtz
MARK H. BARINHOLTZ, P.C.
55 West Monroe Street
Suite 3600
Chicago, IL 60603
(312) 977-0121